## MARY GORDON v. EDWARD McGINNIS.

*Equity—Reformation of mortgage.*

Defendant received from his brother $1,700, to be used in supporting their sister, a helpless paralytic, who had been supported and cared for by her daughter, the complainant. Defendant paid about $200 of this fund to complainant, and then had her appointed guardian of her mother, and secured authority from the probate court under which complainant mortgaged her mother's homestead to defendant for $1,000, which defendant told her was to be hers as a reward for her past and future services in taking care of her mother. After her mother's death, complainant borrowed money of defendant with which she purchased the interest of the other heirs, and gave him a mortgage on the same property, in which was included the $1,000 mortgage, which was discharged. Complainant filed a bill to have this $1,000 deducted from the second mortgage, and a decree for such deduction, and the discharge of the mortgage on tender of the remainder due thereon, is affirmed.

Appeal from Wayne. (Reilly, J.) Argued April 13, 1892. Decided June 10, 1892.

Bill for redemption and an accounting. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Charles Flowers* (*Robert E. Frazer*, of counsel), for complainant.

*John D. Conely*, for defendant.

LONG, J. The complainant on February 18, 1889, made and delivered to the defendant an indenture of mortgage upon certain property in the city of Detroit for the sum of $2,733. This bill is filed to have deducted from the amount of the mortgage the sum of $1,000 and interest, claimed to have been included in it by the wrongful act of the defendant. The court below decreed that this $1,000, with interest at 7 per cent. per annum from April 21, 1885, be deducted, and that upon the tender of the balance defendant should discharge the mortgage. From this decree the defendant appeals.

The history of this mortgage, in brief, is as follows: Mary Gordon, the complainant, was the daughter of Henry and Catherine Gordon. Henry Gordon died in 1882. Complainant's mother had a homestead on Abbott street, in Detroit. She had no other property and no money. None of her children rendered her any assistance, except the complainant, who, after her father's death, supported her mother and herself by her needle until 1884, when her mother became a helpless paralytic, requiring all of complainant's time in care of her. Her mother's brother, Mr. James A. Bailey, a man of large wealth, lived in the city of New York. His true name is McGinnis. He is a brother of the defendant. In

December, 1884, complainant wrote him for assistance, saying to him that the defendant, McGinnis, had helped her a little now and then, but felt that he was not able to do more for her. Upon receipt of this letter, Mr. Bailey answered by telegram, saying:

"I have arranged with the American Express Company to pay Edward [the defendant] $1,000 this day, which he is to use for the benefit of your family to best advantage. Write me particulars what I can do."

It appears that he also telegraphed the defendant to the same purport. Upon receipt of this telegram by complainant she called upon the defendant, being greatly in distress, and asked him for the money, and was told that he had received it, and was going to reserve it, because the boys (complainant's brothers) were contributing nothing to the support of the family. Complainant testifies:

"He said he would look out for me in that way, and would see what could be done about it."

He gave complainant five dollars on that occasion, and a few days afterwards went to the house and gave her two dollars more. It appears that shortly after this the defendant went to New York, and while there advised his brother, James A. Bailey, that he had given to complainant out of the money $400 or $500. Upon his return he suggested to the complainant that she be appointed guardian for her mother, and afterwards procured her appointment to be made. Up to April 21, 1885, he had given to complainant out of the money, in small amounts, the sum of about $200.

On April 21, 1885, the complainant, as guardian, and acting under the direction of the probate court, gave to the defendant a mortgage of $1,000. On the trial, she was asked in reference to the giving of this mortgage, and testified:

"He told me he would have to have a mortgage for the money, and I asked him why, and he said, 'For the boys will only spend it, and they are living here off and on with you and your mother, and, if anything should happen to her, they would get their share.'

"*Q.* Afterwards the mortgage was given by order of the probate court?

"*A.* Yes; I knew I had to sign the mortgage; I had to have it; could not get along in any other way.

"*Q.* Did he say any more before you signed the mortgage as to what he intended to have done with it?

"*A.* Yes, he always said it was for me; that I was to get my reward for my work. He told me that repeatedly. My mother was insane and paralyzed, and she might live for ten years; and I did not know what to do."

This money having been expended by complainant in the support of her mother, she kept boarders for a time, and supported her mother in that way. She claims always to have made a confidant of the defendant, and, being again in distress, visited him at his home in Holly, and was advised by him to again write Mr. Bailey in New York. She wrote her uncle, as suggested, of her pecuniary needs, but said nothing to him about having given the $1,000 mortgage to defendant. In reply to this letter she received the following telegram, dated January 9, 1886:

"Have telegraphed Ned I cannot go to Detroit. Am under a doctor's care myself. You and Ned come here if you wish to explain any matter. I gave Ned money again last summer to provide for you and Kate. See Ned. I must not be annoyed further in this matter, and will pay no attention to any letters or telegrams."

At this time the complainant was not aware that Bailey had sent any more money to assist herself and mother; but it appeared upon the hearing of the present case that it was about $700 more. After the complainant received this telegram, under the advice of the defendant, she went with him to New York. The complain-

ant relates what took place on the way to New York, and while there, as follows:

"When we were going to New York, he said I had lived for some time on that $600 after paying the bills, and that it was not necessary to tell Mr. Bailey how cheap I lived, or I would not get any money from him; and he said there was no use in talking much with him, as he was a man who lived high, and we should get the money from him any way. When we got to New York, we went to the hotel, and Mr. Bailey came to see us, and Mr. McGinnis said he had had me appointed guardian, and that he took a $1,000 mortgage on the place for me; that he was going to look out for me, and it was almost gone. Mr. Bailey asked me, almost in his presence, if I could trust Mr. McGinnis, and I said, 'Yes,' and he said, 'Be careful, for brothers and sisters will quarrel about money.'"

At this time, Mr. Bailey gave to the complainant $300, and told her it was for herself, and bought the tickets for herself and defendant back home. Complainant paid the expenses of this trip out of this money at defendant's suggestion, and gave him $17 or $18 for his railroad fare in going.

In 1887, defendant loaned complainant $200, and took her note for it; and in 1888, $100 more, taking her note for that. In the fall of that year complainant's mother died. The first note given by complainant to her uncle recites the fact that it is to be paid out of the proceeds of the house and lot of Catherine Gordon, when sold. The last note, of $100, recites that the money is to apply on a mortgage which Mary Gordon had petitioned for. It appears that complainant had petitioned the probate court for leave to borrow more money by giving a further mortgage upon the homestead. After the death of Mrs. Gordon, while acting under the advice of defendant, she bought out the other heirs of her mother in the homestead, and for the purpose of raising the money remortgaged that property to the defendant for $2,733.

Included in this mortgage was the $1,000 mortgage there-tofore given, that mortgage being discharged.  Com-plainant claims that she was induced to do this by the defendant, he claiming to aid and assist her in buying out her brothers' and sisters' interests in the homestead property, when she expected and believed that the defend-ant would make the $1,000 all right with her; but that, after she had purchased the other interests, the defend-ant insisted that the whole amount of the mortgage was a valid lien in his hands upon the property, and that she would be compelled to pay the whole mortgage.

The contention·upon the part of the defendant is that he was but the agent of Bailey in the distribution of this fund, and that no one of the Gordon family had any enforceable interest in any part of it; that there did not exist between complainant and defendant any-thing in the nature of legal privity.  It is also contended that this money was not given directly to the complain-ant or any of her family, and that at any time Bailey could have revoked the agency.  A further claim is made that in January, 1885, defendant saw his brother in New York, and stated to him just what disposition he intended to make of the money, and that Bailey approved of it; that, that being so, no one else had a right to dictate about the matter.  It is also contended that the testimony on the part of the defendant is entitled to the greater weight, as it is corroborated by other testimony and the circumstances surrounding the entire transaction. The defendant in his testimony denied that he ever agreed to discharge the $1,000 mortgage, or that he promised to account for the amount of $1,000 when the new mortgage was given.

We are satisfied that the complainant's theory of the case is substantially proven, and that an arrangement was made between the defendant and the complainant by

which the defendant was to discharge this $1,000 from the amount of this mortgage after the estate of complainant's mother had been settled. It is evident that the complainant was led to believe that the defendant desired to aid and assist her, so that she might get some compensation for the years of labor devoted by her to the care of her mother, and that it was well understood between the parties that this $1,000 should be used for that purpose; and that in buying out the other heirs in the estate the complainant was persuaded that the $1,000 which went into the mortgage in controversy would be released from the mortgage after the title had been acquired from the heirs of Mrs. Gordon by the complainant. It is impossible to believe that Mr. Bailey, at the time he advanced these moneys, intended that the defendant should profit thereby, but that they were advanced by Mr. Bailey for the sole purpose of aiding complainant in the care of her mother, who at that time was helpless, and almost an imbecile. It is evident that complainant had the utmost confidence in the defendant, and was led to believe, and did believe, that under his management the $1,000 would be saved to her for her sole use at the death of her mother. The attitude of Mr. Bailey towards the complainant after this litigation commenced is somewhat contradictory to the theory which the complainant now sets up; but we must take Mr. Bailey's conduct and his words at the time the moneys were advanced, rather than his claim now made of the purposes for which he advanced them. The arrangement made by the defendant with the complainant, by which he agreed to save to her the $1,000, we think was properly enforced by the court below.

The decree will be affirmed, with costs.

The other Justices concurred.